## CARTER OIL CO. et al. v. COCHRAN.
### (Two Cases.)

No. 20356. Opinion Filed Sept. 22, 1931.

Victor C. Mieher, Jas. Veasey, G. L. Owen, Walter Davidson, and Womack, Brown & Cund, for plaintiff in error.

Melton & Melton, for defendants in error.

CLARK, V. C. J. This is a consolidation of two actions filed in the district court of Grady county, one by the defendant in error, Grover Yates Cochran, an incompetent, against the Carter Oil Company and the Amerada Petroleum Corporation, plaintiffs in error herein, and other defendants not involved in this appeal; and the other action was commenced by Joe J. Cochran, defendant in error herein, against the Carter Oil Company and the Amerada Petroleum Corporation, and other defendants not involved in this appeal.

After each case had become at issue, by agreement of counsel, the cause of Grover Yates Cochran v. Carter Oil Company et al, was consolidated with the cause of Joe J. Cochran v. Carter Oil Company et al., and tried at the same time. The evidence offered on said trial, and so far as applicable, competent, and pertinent, was to apply to both of said causes, or to either of them, and the court was to direct the jury to return separate verdicts in the said causes, and separate judgments were to be entered thereon, and both parties reserved the right to appeal said consolidated cases, the same as though one case was tried and appealed.

The parties appearing here reverse to what they appeared in the trial court, will be designated as they appeared in the trial court.

Plaintiffs allege in their petition that during the year 1927, and at this time, they were the owners of certain lands described in the petition; that said lands are suitable for and have been used for agricultural purposes during all of the times hereinafter mentioned; that the defendants are engaged in the production of crude oil in certain sections described in the petition and are located northwest and southwest of the properties of the plaintiff; that defendants, in carrying on their operation in drilling for oil, have permitted salt water, base sediment, and crude oil to collect on the lands where wells are drilled by them in large quantities, and that in the spring of 1927, in the months of April and May, said crude oil, salt water, and base sediment were, by the usual and ordinary rains falling in the vicinity where the operations of the defendants were being carried on, washed down on to the lands of the plaintiff, and destroyed the crops then planted and growing on said lands, and injured and damaged the lands, and prevented the plaintiffs from using the same for agricultural purposes.

The plaintiff Joe J. Cochran, in his petition, alleged that about 85 acres of his land, was in a state of cultivation at the time said crude oil, salt water, and base sediment were discharged on same, and plaintiff lost the crops planted upon about 65 acres of said land, and prayed for judgment for $800 for damages for said crops in his first cause of action.

The plaintiff Grover Yates Cochran, an incompetent, alleged in his petition, in his first cause of action, that of his said lands, 50 acres were in the state of cultivation at the time said crude oil, salt water, and base sediment were discharged on same, and that he lost the crops planted upon about 50 acres of said land, and prayed for a judgment in the sum of $500 damages to the crop on said land.

The plaintiff Joe J. Cochran, in his petition, in his second cause of action, alleged that by reason of the crude oil, salt water, and base sediment collecting upon 65 acres of his said land, said lands have been damaged to the extent of one-half the value thereof in the sum of $1,600, and prayed for judgment on his second cause of action in the sum of $1,600.

The plaintiff Grover Yates Cochran, an incompetent, for his second cause of action in his petition, alleged that by reason of said crude oil, salt water, and base sediments collecting upon the lands described, said

lands have been damaged in the sum of $1,250, and prayed for judgment on his second cause of action in the sum of $1,250,

After motions and demurrers had been filed and ruled upon, the defendants filed their respective answers, in which answers the defendants generally deny the allegations of plaintiffs' petition, and allege that they were operating their properties free and clear of any understanding or agreement with any codefendant, and that the liability, if any, was several and not joint; that the defendants, during the time the respective properties were being operated for oil, operated same in a diligent, skillful, and careful manner, using all the precautions known to the oil industry to prevent the discharge upon surrounding lands and plaintiffs' lands, of any salt water, oil, or other refuse arising from the drilling of oil and gas wells on defendants' properties; that defendants at all times during the operation of their properties maintained reasonable and proper dams, reservoirs, and other receptacles to take care of the waste oil, salt water, and other refuse emanating from their respective leases; that the defendants had not been guilty of negligence or carelessness, nor of the violation of any law, nor were they actuated by malice; but had at all times exercised due care and good faith in an effort to avoid injury to plaintiffs' lands and crops. The defendants, therefore, plead reasonable care in the use of their said properties; that if plaintiffs have been damaged, it is damage for which they cannot recover.

The defendants, further answering, say that they and each of them are in the rightful possession of their said properties under valid oil and gas leases; that the leases were operated in a lawful and natural manner necessary in the operation for the purpose of producing oil or gas, and that, if any salt water or waste oil or other substance did escape from defendants' properties, such escape was without any negligence or carelessness on the part of the defendants. Further answering, the defendants allege that the damage to the plaintiffs' crops or to their lands was due to heavy rains which caused the water to spread over and across plaintiffs' lands and crops, and which flood waters killed and injured the crops and lands of plaintiffs, and that the defendants did not contribute to the overflow or to the injury.

To the respective answers of the defendants, the plaintiffs filed reply in the nature of a general denial.

The causes came on for trial before a jury, and the plaintiffs dismissed their causes of action as to crop damages, leaving the causes of action as to the damage of the land.

Upon a trial to a jury under the issues thus formed, the jury returned a verdict for the plaintiff Joe J. Cochran against the defendants Carter Oil Company and the Amerada Petroleum Corporation, for the sum of $750, and a verdict for plaintiff Grover Yates Cochran, an incompetent, against the Carter Oil Company and the Amerada Petroleum Corporation in the sum of $400.

Judgments of the court were rendered upon each of said verdicts; motions for new trial were filed and overruled, and the defendants Carter Oil Company and the Amerada Petroleum Corporation bring the causes here for review under a joint petition in error and one case-made.

The plaintiffs in error combine their assignments of error under one proposition, and contend that the verdicts and judgments of the court rendered thereon are clearly against the weight of the evidence.

The case-made contains something like 345 pages of evidence, and we will not give a synopsis of the entire record, but examine the same to see if there is any testimony that reasonably tends to support the verdict of the jury.

The evidence disclosed that the plaintiffs owned the lands involved in the suits, and had owned the same a number of years; that the defendants are the owners of oil and gas mining leases and producing oil and gas therefrom, and have been for a number of years prior to the time of this lawsuit; that the defendants' leases lay adjoining or within the watershed of what is known as Rush creek in Grady county; that the creek runs through plaintiffs' farms; that said creek is subject to overflow; that, in the year 1925-26, a drainage ditch was constructed which follows practically the course of the creek; that the first floods came in April in 1927, and then commenced again in August, 1927, and overflowed the lands of plaintiffs.

The evidence shows that the Carter Oil Company, plaintiff in error, was producing oil and doing heavy drilling in the area drained by Rush creek, and that the drainage and overflow from the lands producing oil and being drilled by the Carter Oil Company, plaintiff in error, drained across the lands of plaintiffs; that the evidence from the first overflow in April showed that it

had come down a little creek and gone into Rush creek, and that it hit the plaintiff Joe J. Cochran's land first when it got out of the field before it got to the creek, and that there was evidence of salt water having drained through it; that the refuse or waste oil and salt water drained from the wells of the Carter Oil Company, plaintiff in error, into the creek above plaintiffs' lands; that the accumulation of waste oil continued as the wells were operated, and got worse; that the Carter Oil Company, plaintiff in error, had dug big dirt tanks to hold the waste oil and salt water, and that the plaintiffs saw the pits, and that before the big floods came, the big pits were full of refuse or waste oil and salt water, and when the big flood hit, it cut them out and brought it all down the creek above plaintiffs' lands; that there was no place that salt water could accumulate in the creek except from the drilling of the wells.

The evidence shows that the plaintiff in error Amerada Petroleum Corporation had drilled a salt water well, and also had an interest in production that drained into the creek that overflowed plaintiffs' lands.

An examination of the record further disclosed a great deal of testimony regarding the damage to the lands of plaintiffs by reason of the oil and salt water flooding over the lands, and leaving a base sediment; also evidence regarding the number of acres damaged, and that said lands had been good agricultural lands before the oil, salt water, and base sediment had accumulated thereon; and that where the base sediment was found, the lands were now worthless for agricultural purposes until it is reclaimed. The evidence showed that the land before it became oil soaked was worth from $40 to $75 per acre.

An examination of the evidence discloses it was sufficient to take the case to the jury. The jury having found in favor of the plaintiffs, and there being evidence reasonably tending to support the verdict, the same will not be disturbed. The judgment of the trial court is affirmed.

LESTER, C. J., and RILEY, HEFNER, CULLISON, SWINDALL, McNEILL, and KORNEGAY, JJ., concur. ANDREWS, J., absent.

Note.—See under (1) Annotation in L. R. A. 1916B, 563; 2 R. C. L. 203; R. C. L. Perm. Supp. p. 377.